Stewart McCRAY, Appellant,

v.

Gerald H. HOAG and Elizabeth A. Hoag, Appellees.

No. 05–09–00828–CV.

Court of Appeals of Texas, Dallas.

June 8, 2012.

Bruce K. Packard, Kimberly M.J. Sims, Riney Palter, PLLC, Dallas, TX, for Appellant.

John H. Carney, John H. Carney & Associates, P.C., Chester W. Dingler, Smith & Knott, Houston Watson, Dallas, TX, for Appellees.

Before Justices BRIDGES, MARTIN RICHTER, and MURPHY.

## OPINION ON MOTION FOR REHEARING

Opinion By Justice MARTIN RICHTER.

This appeal was dismissed for want of jurisdiction pursuant to our opinion filed February 29, 2012. Appellant Stewart

McCray timely filed a motion for rehearing and to determine the appeal on the merits, after it non-suited the remaining claims in the trial court and thus rendered the judgment from the trial court final. The motion for rehearing and to determine the appeal on the merits is granted. We withdraw our opinion issued February 29, 2012 and vacate our judgment of that date. The following is now the opinion of the Court.

McCray appeals from a summary judgment in favor of Gerald H. and Elizabeth A. Hoag (the Hoags) on their usury and federal Truth in Lending Act (TILA) claims against McCray resulting from a loan transaction between the parties. We reverse and remand.

## BACKGROUND

The Hoags signed a real estate lien note in favor of McCray on December 17, 2005 in the principal amount of $180,000, with interest at the rate of 12.99 percent per annum. Security for the loan was listed as two real properties described on "Exhibits A and B." The property described on Exhibit A was located in Henderson County, Texas, and the Hoags reference that property as their lake house. The property described on Exhibit B was located in Dallas County, Texas and is identified by the Hoags as their homestead. On the same date, the Hoags executed a separate deed of trust for each property.

Over a year later, the Hoags executed a modification of the note dated January 30, 2007. The modification abated payments due for January through April of 2007 and increased the principal due by $5,000. Paragraph five of the modification provided with respect to security that "[t]he deed of trust that secures the payment of the Promissory Note is hereby modified to reflect that the Promissory Note, as modified by this Modification of Promissory Note is secured by the property described on the attached Exhibit A." The attached Exhibit A is the same attachment as included with the original note and references the lake house in Henderson County.

In early October 2007, counsel for the Hoags sent a certified mail letter to McCray, responding to his "claim of monies due" and asserting the loan transaction was usurious. The Hoags gave McCray sixty days to resolve the issue. Thereafter, on October 15, 2007 and citing a default in the indebtedness secured by the Deed of Trust for the lake house, the trustee issued a notice of trustee's sale of that property scheduled for November 6, 2007.

The Hoags filed the underlying suit against McCray on November 2, 2007, asserting the loan transaction was usurious and seeking a temporary restraining order to stop the foreclosure. By letter dated January 4, 2008, prior to McCray filing an answer in the lawsuit, the Hoags' counsel sent another letter to McCray reasserting the usury claim and stating that the Hoags were exercising their right to rescind the loan transaction under the TILA as a result of McCray's failure to make the required disclosures for a homestead lien. The Hoags later amended their petition to include, among other causes, the TILA claims. In January 2008, the Hoags sold the lake house and used the proceeds to pay on the note.

During the course of litigation, the Hoags filed a motion for partial summary judgment to which McCray failed to respond. The trial court granted summary judgment, but it later granted McCray's motion for new trial and vacated the judgment. Subsequently, the Hoags filed a second motion for partial summary judgment based on their usury and TILA claims. McCray filed an untimely response the day before the hearing. The

trial court struck the response, refused to hear McCray's arguments, and granted judgment for the Hoags on their usury and TILA claims without considering the merits of the summary-judgment motion. The judgment included TILA "recession" damages of $65,340.52 and usury penalties of $173,528, for a "total damages award of $238,845.15" plus attorney's fees and interest. McCray appeals.

## DISCUSSION

We review traditional summary judgments under well-established standards. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The Hoags, as movants, had the burden of showing that no genuine issue of material fact exists and they are entitled to judgment as a matter of law. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to McCray, as the non-movant, is taken as true. *Id.* Every reasonable inference must be indulged in favor of McCray and any doubts resolved in his favor. *Id.* We review the summary judgment de novo to determine whether the Hoags' right to prevail is established as a matter of law. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). The Hoags' summary-judgment motion also must stand or fall on its own merits; they are not entitled to judgment by default. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex.1993); *see also Futerfas v. Park Towers*, 707 S.W.2d 149, 155 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (non-movant's lack of response cannot supply by default summary-judgment proof necessary to establish movant's right).

McCray presents a single issue on appeal, arguing the trial court erred in entering summary judgment in favor of the Hoags on their usury and TILA claims. McCray also contests the adequacy of the Hoags' summary-judgment evidence and challenges the trial court's refusal to consider his late-filed summary-judgment response. We conclude the Hoags failed to establish their entitlement to summary judgment as a matter of law as to both their usury and TILA claims.

### Usury

■ McCray contends disputed facts exist that preclude summary judgment on the Hoags' usury claim. Generally, a usurious transaction is composed of three elements: (1) a loan of money, (2) an absolute obligation to repay the principal, and (3) the exaction of a greater compensation than allowed by law for the use of the money. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994) (citing *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982)); *see also Catalina v. Blasdel*, 881 S.W.2d 295, 297 n. 3 (Tex. 1994) (recognizing elements of usury and not reaching issue whether absolute obligation to repay excluded by legislature under some statutory provisions). A "loan" is an advance of money made to or on behalf of an obligor, "the principal amount of which the obligor has an obligation to pay the creditor." Tex. Fin.Code Ann. § 301.002(a)(10) (West 2006). "Interest" is compensation for the use, forbearance, or detention of money. *Id.* § 301.002(a)(4). "Usurious interest" is interest that exceeds the applicable maximum amount allowed by law. *Id.* § 301.002(a)(17).

The Hoags' summary-judgment evidence consists of thirteen exhibits. Exhibit five is the "Affidavit of Gerald Hoag" and exhibits twelve and thirteen are attorney's

fees affidavits of the Hoags' counsel. Excluding those affidavits, the remaining exhibits include the real estate lien note and modification, the deeds of trust, the October 2007 and January 2008 letters, the notice of foreclosure for the lake house property, the Hoags' closing statement for sale of the lake house in January 2008, a "Texas Credit Letter" dated May 10, 2005 showing rate ceilings for sections 303.003 and 303.009 of the Texas Finance Code, and McCray's responses to the Hoags' request for documents. In his affidavit, Gerald Hoag asserted that all thirteen exhibits were true and correct copies of the originals; the fifth page of the affidavit, which is the only page signed by him, is in different typeface and contains the heading "Personal Business Records Authentication," under which are quoted statements that the attached six copies of records are kept as part of his personal business. The attached six pages are additional copies of the notice of foreclosure and closing statement. It is unclear whether the page of the affidavit containing Hoag's signature purported to attest to the prior four pages or only the "personal business records authentication." Because our resolution of this appeal is not dependent on the admissibility of the documents attached to the summary-judgment motion, including Hoag's affidavit, we assume without deciding that the records are in admissible form and were properly before the court.

The Hoags' usury claim is based on their contention that McCray made a usurious loan as a matter of law when he charged them $86,764 in interest on what they maintain was a $145,000 loan. In Hoag's affidavit, he asserts that he and his wife were loaned the sum of $145,000 and the difference between that amount and the $180,000 shown as principal on the December 2005 real estate lien note is additional interest. He also asserts that the additional sum of $5,000 shown in the January 2007 modification as consideration for abatement of payments is "an additional penalty and interest." Using those assertions, the Hoags calculated the $86,764 in charged interest by taking the $180,000 shown as principal on the note, multiplying it by the note interest rate of 12.99%, and then multiplying that amount by the two-year loan term, for a total of $46,764 in interest under the note for two years. That calculation assumes no payments were made to principal during the two years. Next, the Hoags added $40,000 in interest claimed, which was calculated by adding the $5,000 consideration for the modification and the alleged difference of $35,000 in the amount loaned to them, for total interest charged of $86,764 or "an effective interest rate of 29.92%." Attaching a May 2005 Texas Credit Letter, the Hoags argued in their summary-judgment motion that an 18% credit rate ceiling was applicable to the December 2005 loan.

As to payments, Hoag states in his affidavit that "we made timely payment on the loan until September 2007" and that McCray received payments of $29,846.52. He also states that McCray received $180,494.27 at "Closing," presumably when the Hoags sold the lake house property to a third person in January 2008. The total payments Hoag claims McCray received were $210,340.52.

Even using the Hoags' mathematical assumptions and calculations, and assuming as the Hoags do that there was no reduction in principal,[1] the numbers provided by

---

1. We observe that the note provides for a change in interest based on a reduction in principal. Specifically, the note states "[i]nterest will be calculated on the unpaid principal to the date of each installment. Each payment will be credited first to the reduction of accrued interest and then to the reduction in principal."

the Hoags are not supportable for summary judgment purposes. For example, the Hoags calculate that McCray charged $86,764 in interest on a $145,000 loan, but provide no calculation resolving the substantial evidentiary gap that exists between the $210,340.52 amount claimed to have been received by McCray and the $231,764 total under their calculation of interest. Also, under the terms of the note, it was payable in monthly installment payments of principal and interest; Hoag asserted in his affidavit that they made "timely" payments totaling $29,846.25 until September 2007. Yet the summary-judgment proof is silent as to credits to principal and interest or dates of accrual (assuming Hoag and his wife made those payments). Similarly, the Hoags' summary-judgment proof contains no breakdown of how the $180,494.27 "closing" amount was calculated or whether that amount paid the entire balance on the note. The maturity date of the note was listed as February 1, 2008, at which time a balloon payment was due. But in January 2008 when the Hoags paid McCray $180,494.27, the note had not yet matured by its terms. The Hoags present no evidence that the note had been accelerated. Finally, the modification reflects that the Hoags were in default in January 2007. The Hoags' summary-judgment proof shows they were again in default from at least September 2007 through the sale of the lake house property in January 2008. But there is no record of how payments were credited or what penalties had accrued under the note as a result of the Hoags' defaults.

■■■ The Hoags do not address questions raised by McCray as to the adequacy of their summary-judgment proof. Rather, they argue McCray failed to provide the trial court with any competent evidence opposing summary judgment and the trial court properly struck McCray's late-filed response. The Hoags were not entitled to summary judgment by default. *See McConnell,* 858 S.W.2d at 343. On this record, indulging every reasonable inference in favor of McCray and taking that evidence as true, the Hoags failed to meet their summary-judgment burden of showing they met the third usury element that McCray exacted a greater compensation than allowed by law for use of the money by the Hoags. *See First Bank,* 877 S.W.2d at 287 (usury); *Sysco Food Servs.,* 890 S.W.2d at 800 (burden).[2] We sustain McCray's issue to the extent he contends a material fact issue exists as to whether the loan transaction was usurious.

### Federal Truth in Lending Act

■■ McCray also contends that genuine issues of material fact exist as to whether the TILA applies to this transaction and, if so, as to whether the Hoags invoked their statutory rescission remedies. The TILA applies to credit transactions in which a security interest is or will be acquired in real property used or expected to be used as the principal dwelling of the consumer. 15 U.S.C. § 1603(3) (2008 & Supp.2009). If applicable, a borrower's rescission rights

2. McCray contends the savings clause in the note and deeds of trust, as well as the written representations by the Hoags in the modification that they had no claims against him as of that date, preclude a finding of usury. We observe that, while a party may not escape penalty by disclaiming the intention to charge usurious interest, usury is a matter of intention and a savings clause is evidence of an intent not to charge usurious interest. *See Kennon v. McGraw,* 281 S.W.3d 648, 652 (Tex.App.-Eastland 2009, no pet.). The effect of a savings clause is determined by a review of the whole transaction in light of surrounding circumstances. *Id.* In light of our conclusion, however, we do not reach McCray's argument that the savings clause creates, at the least, a fact question.

are exercisable by notifying the creditor of the rescission "by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2); 15 U.S.C. § 1635(a) ("obligor shall have the right to rescind the transaction ... by notifying the creditor"). Once the borrower exercises the right of rescission, the creditor has twenty calendar days "after receipt of a notice of rescission" to return the money or property given and "shall take any action necessary to reflect the termination of the security interest." *Id.* § 226.23(d)(2); 15 U.S.C. § 1635(b).

Citing the "Purpose Clause" that is contained in each deed of trust, McCray asserts a fact question exists as to whether the TILA is applicable. That clause provides: "[The Hoags] represent[ ] that this deed of trust and the note are given for the purpose of obtaining and securing a non-homestead loan against the Secured Property." The Hoags respond that it "is absolutely clear from the record that on December 17, 2005, [McCray] loaned and advanced to [the Hoags] the sum of $145,000 secured by a deed of trust on their homestead."

It is undisputed that the Dallas property listed as secured property on Exhibit B to the original note was the Hoags' homestead. It also is undisputed that the property listed for foreclosure by the trustee and sold by the Hoags to a third party was the lake house property identified on Exhibit A to the note. The modification agreed to by the Hoags on January 30, 2007, prior to any rescission attempts, provided that the deed of trust securing payment of the note was "modified to reflect that the Promissory Note, as modified by this Modification of Promissory Note is

secured by the property described on the attached Exhibit A." We need not decide, however, whether a fact question exists on this record as to whether the TILA applies, because we conclude the Hoags failed to prove they exercised any rescission remedies.

The Hoags' rescission rights, if any, were exercisable under the TILA by notifying McCray of the rescission "by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). Once they exercised the right of rescission, McCray had twenty calendar days "after receipt of a notice of rescission" to return the money or property and was required to take "any action necessary to reflect the termination of the security interest." *Id.* § 226.23(d)(2). The Hoags claim they exercised a right of rescission by directing their attorney to send the January 4, 2008 certified mail letter. The summary-judgment evidence shows the unopened envelope associated with the Hoags' rescission letter was marked "RETURN TO SENDER," "UNCLAIMED," "UNABLE TO FORWARD." [3]

McCray contends that because the Hoags sent their rescission letter by certified mail, the notice was sent by "other means of written communication" under the statute. *See id.* § 226.23(a)(2). He argues the Hoags had to show the notice was actually delivered because the clear intent of the TILA is to make sure the creditor gets notice of the intent to rescind. The Hoags do not respond to McCray's argument; rather, they asserted in the trial court and on appeal that they exercised their right of rescission by sending the letter.

---

**3.** The Hoags state on appeal that, after they sent the letter, McCray was required to take steps to reflect that the security interest had been voided and McCray has "continued to assert the secured position." Their record reference for the claim McCray has continued to assert his secured position cites only a reference to the lake house property.

We conclude, under the plain language of the statute, that "mail" as used in 12 C.F.R. § 226.23(a)(2) is not equivalent to certified mail and that rescission notice requires actual notice. Accordingly, the Hoags failed to show they exercised any rescission remedy under the TILA because their summary-judgment evidence negates actual receipt by McCray.

The statute provides that notice of rescission is presumed given "when mailed." *Id.* If sent by "other means," notice is considered given "when delivered." *Id.* Additionally, the creditor has twenty days "after receipt of a notice of rescission" to return money or property and to take any action necessary to reflect termination of the security interest. *Id.* § 226.23(d)(2). Under the express terms of the statute, receipt or delivery is contemplated. For example, the creditor's obligations do not arise until twenty days after receipt of the notice of rescission. *Id.* Even if sent by "mail" as used in 12 C.F.R. § 226.23(a)(2), nothing suggests the presumption of notice cannot be rebutted. Case law provides expressly that notice must be real under the plain language of the statute.

Specifically, our conclusion is consistent with the analyses of courts interpreting the type of notice required under the TILA to be actual notice. *See Menashe v. Bank of N.Y.*, Civil No. 10–00306–JMS/BMK, 2011 WL 4527384, at *6 (D.Haw. Sept. 27, 2011) (concluding plain language of 12 C.F.R. § 226.23(a)(2) requires "*actual* notice through written communication"); *Mitchell v. Bank of Am.*, Civil No. 10cv432 L(WVG), 2011 WL 334988, at *2 (S.D.Cal. Jan. 31, 2011) (concluding language of 12 C.F.R. § 226.23(a)(2) is clear that "to rescind a loan, actual notice of the rescission must be given to the creditor and it may not be presumed"). Although neither *Menashe* nor *Mitchell* involved the question of whether "mail" as used in the regulation was equivalent to "certified mail," both courts were interpreting the specific language of 12 C.F.R. § 226.23(a)(2) and concluded the trial court must enforce the text according its terms.

In the present case, any distinction between "mail" as used in the statute and certified mail makes no difference, because the summary-judgment record shows McCray did not receive the notice sent by certified mail. It was returned marked "unclaimed." Yet a fundamental difference exists generally between mail and certified mail. Specifically, regular United States mail does not require a delivery notice or receipt; it is placed in the mail receptacle at the posted address. Certified mail, sent return receipt requested as here, is returned to the sender if not signed for. Common sense thus dictates that regular mail is presumed delivered and certified mail enjoys no presumption unless the receipt is returned bearing an appropriate notation. Our Court also has recognized that regular mail is distinct from certified mail and other means of document transfer in observing the requirements for service under our state procedural rules. *See Amir–Sharif v. Quick Trip Corp.*, No. 05–09–01497–CV, 2011 WL 1367042, at *3 (Tex.App.-Dallas Apr. 12, 2011, no pet.) (mem. op.) (concluding regular mail not authorized method of service under rule 21a, which provides for service by physical delivery, certified or registered mail, telephonic document transfer, or such other manner as directed by trial court).

The Hoags' summary-judgment evidence here shows their January 4, 2008 rescission letter was not received by McCray. They also have offered no argument to the contrary. Accordingly, we conclude the Hoags have failed to show they invoked any rescission remedy under the TILA and therefore sustain McCray's issue to

the extent he contends a material fact issue exists as to whether the Hoags invoked any statutory rescission remedies.

## CONCLUSION

The Hoags have failed to establish their right to recover on their usury and TILA claims as a matter of law. Accordingly, we reverse the trial court's judgment and remand the case to the trial court for further proceedings. As a result of our resolution of McCray's issue, we do not address McCray's remaining contention related to the trial court's refusal to consider his late-filed summary-judgment response. *See* TEX.R.APP. P. 47.1.