# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40014
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2018

Lyle W. Cayce
Clerk

JOHN C. KING,

      Plaintiff - Appellant

v.

SELECT PORTFOLIO SERVICING, INCORPORATED; U.S. BANK, N.A., Successor Trustee to Bank of America, N.A., as Successor Trustee to LaSalle Bank, N.A., as Trustee for the Holders of Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FF18,

      Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:15-CV-830

Before WIENER, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

    John King sought a declaratory judgment to quiet title to certain real property. He claimed that the defendants' interests under a deed of trust were

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40014

unenforceable due to their inaction after accelerating King's loan. The district court disagreed and dismissed. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2006, plaintiff John King and his then-wife executed a deed of trust to First Franklin, conveying in trust certain real property King owned in Frisco, Texas, in order to secure the payment of a promissory note between Mrs. King and First Franklin. Defendant U.S. Bank has succeeded to First Franklin's interest, and defendant Select Portfolio Servicing ("SPS") is the current loan servicer. King has made no payments on the loan since April 2008.

After the Kings defaulted, SPS's predecessor accelerated the debt in November 2008. The notice of acceleration stated that the Kings owed $191,284.92 in principal, interest, and assorted fees. Nothing relevant here occurred thereafter until December 2010, when the then-loan servicer sent King's wife a notice of default and intent to accelerate. It was mailed to the property address and to a second address. This 2010 notice declared the loan in default but that a payment of "$55,843.54 plus any additional regular monthly payment or payments, late charges, fees and charge[s] which become due on or before January 5, 2011," would cure the default. Failure to cure the default could result in foreclosure. In 2012, two additional notices of default and intent to accelerate were mailed to the Kings. All prior accelerations were rescinded in October 2014.

In October 2015, King filed a petition in Texas state court seeking a declaratory judgment that would quiet title to his property. King argued that because the defendants failed to foreclose on the property within the Texas four-year statute of limitations that began when they accelerated the loan in 2008, any claim they had to the property is time-barred. The defendants

2

No. 18-40014

answered, denying King was entitled to any relief, and then filed a timely notice of removal to the United States District Court for the Eastern District of Texas.  The defendants moved for summary judgment, claiming that they had abandoned acceleration and thus the statute of limitations was inapplicable.  The district court[1] agreed with the defendants and granted their motion.

DISCUSSION

We review a grant of summary judgment *de novo.  Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 103 (5th Cir. 2015).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

The central issue in this appeal is whether the defendants abandoned their initial 2008 acceleration of the loan through the 2010 or 2012 notices of default.  If not, the 2014 attempt to rescind prior notices of acceleration was too late, and the defendants' claim to the property is time-barred.

"A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues."  TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a).  "If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment."  *Id.* § 16.035(e).  If there is an optional acceleration clause, though, the cause of action accrues when that option is exercised.  *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

---

[1] The parties consented to having a magistrate judge conduct proceedings in the case.

No. 18-40014

A lender can unilaterally abandon acceleration. *Boren*, 807 F.3d at 105. "Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date." *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Abandonment may be expressed "by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms." *Boren,* 807 F.3d at 105. Abandonment also can occur "impliedly, through conduct inconsistent with a claim to the right." *Boren*, 807 F.3d at 106 (quoting *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015)).

King argues that none of the notices of default were effective at abandoning the acceleration, while the defendants argue that each notice of default effectively abandoned any prior acceleration. We evaluate first the 2010 notice of default, which King challenges in both form and substance.

King's arguments about the 2010 notice, which he stipulated his wife received though not "until almost Christmas of 2010," focus on two formal requirements found in the deed of trust. One concerns the dating of when the lender is deemed to have given notice, and the other concerns the time period for the borrower to respond after notice is given. The parties dispute whether the notice of default had to comply with either requirement in order to communicate intent to abandon.

As to the applicable date of the notice, King emphasizes this language: "Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." He then argues that because the notice was sent by certified mail, not first-class mail, such notice is "deemed to have been given" only on the date it was

4

received.  Under this argument, the date of December 6, 2010, printed on the notice is not the date it will be "deemed to have been given" because it was sent through certified mail, not first-class mail.

We have described certified mail as "a special type of first class mail whose primary purpose is to provide evidence of an individual's receipt of delivery." *Degruise v. Sprint Corp.*, 279 F.3d 333, 337 (5th Cir. 2002).  Unlike regular first-class mail, though, certified mail is to be returned to the sender if the recipient does not sign for it.  *McCray v. Hoag*, 372 S.W.3d 237, 243 (Tex. App.—Dallas 2012, no pet.)  An intermediate Texas appellate court relied on "common sense" to declare "that regular mail is presumed delivered and certified mail enjoys no presumption unless the receipt is returned bearing an appropriate notation."  *Id.*  No Texas Supreme Court decision so holding has been discovered.  We at least see questions about what if any presumptions are applicable in Texas when notice is sent by certified mail, and whether such presumptions should affect how to interpret the deed of trust language.  Interesting questions to some legal minds, perhaps, but irrelevant ones here because of our analysis of the next part of King's argument.  We conclude by relying on King's stipulation that Mrs. King actually received the notice just before Christmas in December 2010 (King gives the specific date of December 21 in his brief).   Thus, applying the stipulation to the terms of the deed of trust, notice would be deemed given no later than December 24, 2010.

King argues that the date the notice is deemed given matters.  If notice was not given until late December 2010, it was ineffective by requiring a response by January 5, 2011, thereby allowing less that the 30 days to respond that the deed of trust required.  If the Kings did not meet that deadline, the letter warned, the mortgage payments would be accelerated and foreclosure proceedings would be initiated.  Assuming that the notice is deemed given to Mrs. King on a date that gave her fewer than 30 days to accept the offer and

avoid acceleration, such facts would affect the ability of the lenders to use that notice to accelerate the loan. Yet, even if the notice did not give the lender the rights it wanted, that does not answer whether it gave the borrower rights it could enforce. The question before us is whether the 2010 notice communicated the lender's intent to abandon its prior acceleration. The deed of trust does not create any requirements for abandonment of a prior acceleration. Instead, the answer to this question comes from Texas law on how lenders are to communicate such a change in plans. What is required is clarity. We now analyze that law.

We repeat the relevant language of the notice dated December 6, 2010. It stated that the loan was in default but that "$55,843.54 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before January 5, 2011" would cure the default. As King concedes, we have held that notice to the borrower that the lender was no longer seeking the full balance of the loan and that it would allow the borrower to cure the default expressed sufficiently clear intent to abandon acceleration. *See Boren*, 807 F.3d at 105. Indeed, the notices in *Boren* (there were several) that followed earlier notices of acceleration were quite similar to what was given here. According to the *Boren* court:

> The Second Notice of Default stated that "the total amount necessary to bring [the Boren's] loan current [was] $74,313.28," which was an amount less than the fully accelerated balance of the loan. In addition, the Second Notice of Default stated that if the Borens did not cure their "default within forty five (45) days . . . [the loan servicer would] accelerate the maturity of date of the Note and declare all outstanding amounts under the Note immediately due and payable."

*Id.* at 103. Despite various arguments by the borrower Boren, including citing to a statutory procedure for rescinding an earlier acceleration that the lender had not followed, we held that these notices effectively withdrew the earlier

6

notices of default and stopped the running of the statute of limitations for pursuing foreclosure. *Id.* at 106.

King contends that *Boren* limits rescission to a situation in which the lender permits the borrower to bring the loan current by paying in full all the past-due amounts. It is true that in *Boren*, as indicated in the description of the notice we quoted above, the offer from the lender required the borrower to pay all arrearages under the loan — the borrower had to "cure its default." *Id.* at 105. We also stated that the lender unilaterally abandoned its prior acceleration "by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms." *Id.*

The December 2010 notice given to King calculated the missed monthly payments, added certain other charges, and offered settlement if that amount was paid. That at least is a similar offer to the one made in *Boren*, but that does not matter. Regardless of whether the amount needed to reinstate the loan here was calculated in the same manner as in *Boren,* that precedent neither states nor implies that the only offer that halts acceleration is one whose terms are comparable to those offered Boren. We also see no reason that would be the case. The legal issue is one of waiver, which "can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right." *Id.* at 106 (quoting *G.T. Leach Builders*, 458 S.W.3d at 511). Any compromise that clearly repudiates the earlier demand is potentially effective. The precise terms of the rescission were part of our *Boren* discussion of facts but were not part of our holding.

Here, the 2010 notice provided that the default could be cured by paying the monthly charges, late charges, and uncollected costs, totaling $55,843.54, on or before January 5, 2011. The district court held that the December 2010

notice effectively abandoned the 2008 acceleration, which had required payment of the entire unpaid balance of the loan. We agree that the 2010 notice was sufficient to abandon the 2008 acceleration. Even if it was inadequate to support a new declaration of default because it did not give the borrower 30 days to respond to the offer, that shortcoming has no effect on its clear declaration of abandonment of the prior acceleration.

Because we hold that the defendants abandoned the 2008 acceleration with the 2010 notice, the four-year statute of limitations stopped. It would have restarted with the next valid acceleration. The defendants claim that the December 2010 and 2012 notices of default each restarted the statute of limitations. These notices are irrelevant to our resolution of the case because there was an October 2014 abandonment of prior accelerations, and King does not contest its effectiveness. Dismissal of his claims was therefore appropriate.

AFFIRMED.